FILED
2024 Oct-07  AM 09:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT A

DOCUMENT 2


ELECTRONICALLY FILED
2/26/2024 9:55 PM
01-CV-2024-900860.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
JACQUELINE ANDERSON  SMITH, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
## CIVIL DIVISION

| | |
|---|---|
| TERRY WHITE, ) | |
| an individual ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No.: |
| ) | |
| PARKING ENFORCEMENT SYSTEMS, ) | JURY TRIAL DEMANDED |
| INC., an Alabama Corporation; ) | |
| CRC 2, LLC, an Alabama limited liability ) | |
| company; ) | |
| ROBERT L. CROOK, JR., an individual; ) | |
| FICTICIOUS DEFENDANTS 1-10, ) | |
| whether singular or plural, entity or ) | |
| entities, whose negligence, recklessness, ) | |
| and/or wantonness proximately caused or ) | |
| contributed to cause the damages ) | |
| suffered by Plaintiff on the date and ) | |
| occasion made the basis of this lawsuit ) | |
| whose names are currently unknown but ) | |
| will be added by amendment when ) | |
| ascertained. ) | |
| ) | |
| Defendants. ) | |

## CLASS COMPLAINT

Plaintiff, Terry White, ("Plaintiff" and/or "Mr. White"), on behalf of himself and

all others similarly situated, by and through his undersigned counsel, asserts the

following claims for relief against the Defendants, Parking Enforcement Systems,

Inc. ("PES"), CRC 2, LLC ("CRC"), and Robert L. Crook, Jr. ("Crook") as follows:

1

## INTRODUCTION

Mr. White brings this class-action complaint seeking relief from Defendants' pattern and practice of illegal and predatory parking and towing practices in private "Pay to Park" lots located in downtown Birmingham, Alabama.

Defendants' practices include illegal towing and over-charging of parking and towing fees against local and visiting patrons of Birmingham's numerous downtown businesses, dining and entertainment establishments. Defendant's conduct particularly hurts patrons of the shops and restaurants of the City of Birmingham who may not be familiar with the "Park Mobile Pay App" (the "App") required to park in lots such as owned by CRC and Crook and "enforced" by PES. Regrettably, PES's collection practices, carried out in collusion with CRC and Crook, are unconscionable and mafioso in nature. As one Birmingham businessman put it, "These folks are modern day pirates, they are unabashed predators. Rude, arrogant, and pernicious."[1]

The consequences are catastrophic if an App user inputs a wrong number or fails to understand the App and what information is being conveyed via the App. Not only is the patron's vehicle illegally towed, but now the patron and their guest must locate their vehicle, travel to the tow lot, and are forced to pay a statutory fee of $160.00, or more, to retrieve their vehicle. Each time a person has legitimately paid to park but gets towed for simply making a mistake in entering the correct tag number,

---

[1] See Al.com report "Legal records show recent public outcry against Parking Enforcement Systems is nothing new." https://www.al.com/news/birmingham/2023/01/legal-records-show-recent-public-outcry-against-parking-enforcement-systems-is-nothing-new.html, January 26, 2023.

DOCUMENT 2

Defendants violate City of Birmingham Ordinances by collecting more than one-half the statutory towing fee.[2]

The vehicle owners are not provided with the necessary records and receipts required by City of Birmingham statutes and ordinances. The Parking Lot owner, here, CRC, and Crook, are unjustly enriched by charging for the same parking space after the vehicle is towed, despite having received the rent fee from the first person.

PES has a community wide reputation for bullying, demeaning, and being rude to the public and PES effectively makes the public beg to get their vehicle back. PES also forces the owner of the vehicle to electronically "sign" and assent to terms and conditions never agreed to in the initial parking space rental transaction. PES's hostile rhetoric and animosity to the public may have contributed to the 2022 shooting death of a pay-to-park customer by representatives of PES.

This type of predatory towing and mafia-like collection practices has been a black eye on the City of Birmingham and Jefferson County for over a decade. Plaintiff asks this court to put a stop to such conduct and release Birmingham's downtown patrons from their ugly practices.

### PARTIES

1. The Plaintiff, **Terry White**, hereinafter sometimes referred to as "Plaintiff," is an individual over the age of nineteen (19) years, who is a resident of Jefferson

---

[2] See City of Birmingham Ordinance § 12-19-85(b).

3

County, Alabama. Mr. White is a 71-year-old man and within the protected class of people.

2. The Defendant, **Parking Enforcement Systems, Inc.**, hereinafter referred to as "PES" and/or "Defendant," is an Alabama corporation, engaged, *inter alia*, in the nonconsensual towing of automobiles, and whose principal place of business is located within Jefferson County, Alabama.

3. Defendant **CRC 2, LLC,** hereinafter referred to as "CRC" and/or "Defendant", is the owner of the parking lot located at 2311 2nd Avenue North, Birmingham, Alabama and 2314 3rd Avenue North. Through information and belief, Defendant, CRC 2, LLC, is an Alabama Limited Liability Corporation whose principal place of business is located in Jefferson County, Alabama.

4. Defendant, **Robert L. Crook, Jr., hereinafter referred to as "Crook" and/or "Defendant** , is the owner and managing member of CRC, 2, LLC. Through information and belief, Crook hired and directs PES in its parking enforcement operations. Additionally, through information and belief, Crook owns and leases many other private parking lots within the City of Birmingham and Jefferson County and, owns and manages the "tow lot" located at 2608 5th Ave. S., Birmingham, Alabama where PES operates its business.

5.  FICTITIOUS DEFENDANTS ONE THROUGH TEN, whether singular or plural, entity or entities, whose negligence, recklessness and/or wantonness proximately caused or contributed to cause the damages suffered by Plaintiff on the date and occasion made basis of this lawsuit.

4

DOCUMENT 2

6.  Plaintiff avers that the identities of the FICTITIOUS DEFENDANTS are otherwise unknown to Plaintiff at this time, or, if their names are known to Plaintiff, their identities as Proper Party Defendants are not known to Plaintiff at this time, and their names and identities as Proper Party Defendant will be substituted by amendment when ascertained.

7.  In doing the acts and omission herein alleged, Plaintiff alleges that Defendants conspired with and among one another and/or with other individuals or entities presently unknown to Plaintiff, to engage in the conduct made the subject of this Complaint, and acted as agents of one another, pursuant to a common goal or scheme to carry out wrongful patterns.

8.  As the principal of its employees and agents, Defendants are liable to Plaintiff for any and all damages suffered by Plaintiff as a result of the unlawful acts of Defendants' employees and agents.  The duties owed to the Plaintiff under Alabama law are nondelegable duties and as such all the above defendants are jointly and severally liable to the Plaintiff for his damages.

## ALTERNATIVE PLEADINGS

9.  Plaintiff alleges that the occurrences made the subject of this complaint require that Plaintiff plead one or more of the following counts, or, in some cases, one or more of the individual claims thereof, in the alternative, where inconsistency arises in its application.

5

DOCUMENT 2

## FACTUAL ALLEGATIONS

10. Plaintiff hereby incorporates and adopts each of the above and foregoing allegations and material averments as if fully set forth herein.

11. The revitalization of downtown Birmingham has rapidly progressed, introducing numerous restaurants, entertainment centers and businesses to the area. An unfortunate side-effect of this growth is that parking for the general public is severely limited and often difficult to find.

12. Due to the lack of adequate public parking, private "pay to park" parking lots now make substantial monies each day for short-term rental of parking spaces, thereby allowing customers visiting the restaurants and businesses in downtown Birmingham to park and enjoy the local establishments.

13. To curb unauthorized parking, the City of Birmingham enacted ordinances regarding vehicle "booting" and towing of unauthorized cars in these private parking lots.

14. A significant number of the private parking lots in downtown Birmingham are owned through single member LLC's and serviced, or "enforced" by PES. For over ten years, the Birmingham City Council has received numerous complaints regarding the predatory towing tactics of PES.[3]

---

[3] See "Towing mishap caught on camera; nearby restaurants say predatory towing been going on for years ",
https://www.wbrc.com/2023/01/26/towing-mishap-caught-camera-nearby-restaurants-say-predatory-towing-been-going-years/ WBRC ^ news, January 25, 2023.

6

DOCUMENT 2

15. In June, 2023, Birmingham City Council member Valerie Abbot commented at a City Council meeting about the number of complaints regarding the towing practices of PES…"This is something we get complaints about every single weekend, and sometimes in between, because we have issues with our ordinance…All the people who've been towed away need to come to that meeting and let us know how they feel, even though they've already called us a million times and we haven't figured out a way to fix it!" [4] [5] [6]

16. Over a decade ago, the Birmingham City Council attempted to address the issue with the pay-to-park lots by enacting ordinances regarding nonconsensual towing and vehicle immobilization to create general operating standards for towing companies as well as limit the charges that a towing company can assess and eliminate predatory booting and towing practices. See City of Birmingham Ordinance No. 13-81, §12-19-1, *et seq*.

17. The City of Birmingham Ordinance was intended to provide protection both to lot owners and the general public by establishing clear guidelines to private parking lot owners and nonconsensual towing companies.

18. Unfortunately, the changes to the Ordinances and the publicity of PES's nefarious conduct has done nothing to stem Defendants' practices. PES, CRC, and Crook

---

[4] See "Birmingham to Air Proposal on Predatory Towing During Wednesday Public Hearing," https://birminghamwatch.org/birmingham-to-air-proposal-on-predatory-towing-during-wednesday-public-hearing/ June 6, 2023.
[5] See "Predatory towing in Birmingham prompts outraged residents to unite on Facebook," https://www.al.com/news/2023/05/predatory-towing-in-birmingham-prompts-outraged-residents-to-unite-on-facebook.html May 24, 2023.
[6] See " Birmingham to act against 'unscrupulous towing' as driver complaints pour in," https://www.al.com/news/2015/03/birmingham_to_act_against_unsc.html, March 27, 2015.

DOCUMENT 2

continue to be unjustly enriched by their illegal and unethical towing practices. The public has continued to make complaints, but unfortunately the practices have continued.

19. In 2022, a PES employee shot and killed a man over the towing of his vehicle. Through information and belief, PES, CRC and Crook did not change their business practices, and none of the employees were disciplined. Those same employees are still employed as parking lot "enforcers" to this day.[7]  Defendants CRC and Crook have done nothing to address, sanction or supervise the illegal practices of PES.

20. On or about September 29, 2023, in an attempt to gain control of the pay-to-park fiasco, the City of Birmingham passed Ordinance No. 23-118. This ordinance amended Chapter 19 of Title 12 of the General Code of the City of Birmingham regarding vehicle immobilization and nonconsensual towing within the city limits of Birmingham, Alabama.

21. The new Ordinance was not a complete re-write of the old Ordinance. For example, § 12-19-84 follows and adopts the previous Ordinance requiring that a written receipt be provided upon payment for towing. The receipt must contain certain information including an information sheet and card supplied by the City regarding information about how to file a complaint with the City. Similarly, § 12-

---

[7] See "Hey – where's my car? Towing in downtown Birmingham can sometimes result in frightening encounters and online fury," https://www.al.com/news/birmingham/2023/01/hey-wheres-my-car-towing-in-downtown-birmingham-can-sometimes-result-in-frightening-encounters-and-online-fury.html, AL.com, August 30, 2023.

19-85(b)(1), of the ordinance limits the amount of fees that can be charged by nonconsensual tow companies to $160.00.

22. The Ordinance was amended to limit the unconscionable result found where a vehicle is towed following an innocent, typographical error. To this end, § 12-19-85(b) states as follows:

> If a vehicle owner or agent thereof can show conclusive proof of payment of parking fees prior to the tow and that the vehicle had not remained beyond the time for which payment was made, then only one-half the rate of the maximum fee for the vehicle's weight classification allowed by subsection (b) of this section may be charged, and upon payment of the charge, the towing service licensee or operator shall release the vehicle as authorized by this article. Said proof can be in the form of a receipt for parking fees or other similar evidence that the vehicle owner paid the parking fees prior to the tow. The evidence must include the location where the vehicle was parked, the tag number of the vehicle, and the period for which the parking fees were paid.

23. Additionally, § 12-19-29 of the Ordinance sought to prevent self-serving corruption and kickbacks by requiring complete separation, both direct and indirect, of financial relationship between private parking lot owners and nonconsensual towing companies. "It shall be unlawful for any parking lot owner to… have direct or indirect monetary interest in a…towing service that tows or causes the towing

of an unauthorized vehicle on the parking lot." See Ordinance 23-118 § 12-19-29(b)(2).

24. Unfortunately, CRC and Crook continue to profit from PES's towing practices and fail to supervise or take adequate steps to protect the public from unscrupulous and predatory tow companies.  The result is that people such as the Plaintiff, Terry White, are damaged by PES, CRC, and Crook's practices.

25. Mr. White, on behalf of himself and others similarly situated, seeks to redress the illegal and fraudulent tactics of PES, CRC, and Crook.


*Plaintiff's Specific Factual Allegations:*

26.  On or about the evening of December 15, 2023, Plaintiff and his wife visited East West Restaurant located on 2nd Avenue North in Birmingham, Alabama.

27. Because Plaintiff and his wife are elderly, they sought out a parking place close to the restaurant at which they would be dining.

28. At that time, they found and parked their 2016 Toyota Sienna vehicle in the pay-to-park lot located at 2311 2nd Avenue North, Birmingham, Alabama. This lot is a short distance from the East West restaurant. The pay-to-park lot is owned and operated by CRC. According to the Alabama Secretary of State's records, CRC is a single member LLC, which is managed by Crook.

29. Plaintiff was initially unsure how to pay for parking, and then saw the "Park Mobile" sign on the lot. Plaintiff downloaded the "Park Mobile App" to his

10

cellphone, followed the instructions identifying his name and email, and inputted his credit card number. Plaintiff paid a total of $12.45 to rent parking space, thereby reserving the spot for at least three hours of time.

30. Plaintiff received an online receipt for the time he had paid to park. After eating dinner, he and his wife returned to the parking lot and found his vehicle was gone. Plaintiff observed that  another vehicle was parked in the space that Plaintiff had parked and paid for. Plaintiff asked an attendant in the lot if the attendant had seen anyone take his van and was told Plaintiff's vehicle had been towed away.

31. Plaintiff immediately contacted the telephone number printed on the "Park Mobile" sign and was provided with the address of the "tow-lot" where his vehicle had been impounded.

32. Plaintiff and his wife were able to obtain a ride to the Defendant's PES tow-lot located at 2608 5th Avenue South, Birmingham, Alabama, to retrieve his van.

33. Through information and belief, Crook is also the owner of the property and lot where the Defendant, PES operates its tow lot. A portion of PES's business income is paid to Crook in the form of a lease payment each month. Additionally, through information and belief, Mr. Crook leases the property to PES in order to utilize their services as his personal "non-consensual towing company" to service the pay-to-park lots he owns and operates.

34. Upon arrival at PES's tow lot, Plaintiff asked the representative of PES if he had seen the tow truck take his van. Plaintiff was told that PES had towed the van

DOCUMENT 2

because the van was illegally parked.  Plaintiff protested, stating that he had paid

with a credit card, input his name and email, and paid for the time. Plaintiff also

told the PES representative that Plaintiff had a receipt for the parking and

presented the electronic receipt on Plaintiff's cell phone to the PES representative

and requested that PES release his car because Plaintiff had legitimately paid for

the parking space and did not exceed the time limit. Representatives from PES

refused. Instead, they told him the tag number had been input incorrectly and did

not match the one in the parking App.  Plaintiff requested to speak with the owner

but was told he could not do so.

35. Plaintiff demanded the return of his vehicle but was refused. Instead, despite

Plaintiff having conclusively proven to PES that he had paid to park, Plaintiff was

told that the only way he could get his vehicle back would be to pay a fee of $166.40

by credit card, and that Plaintiff must also sign an electronic tablet that contained

additional terms and conditions which Plaintiff could not see and had never

originally agreed to when he initially rented the parking space.

36. When Plaintiff asked PES what PES was requiring him to sign, Plaintiff was told

it was just a statement saying that he had picked up the vehicle. To the contrary,

the signature pad actually set forth a document with "additional terms and

conditions" which were never communicated to the Plaintiff at the time he paid to

park his vehicle. PES effectively used its hostile control of the vehicle to force the

Plaintiff, a 71-year-old man, to agree to terms, conditions  and factual averments

that he did not agree to.

DOCUMENT 2

37. Before he signed the pad or paid the money, Plaintiff again politely asked PES' representatives numerous times if he could simply pay the required money and just retrieve his vehicle. Each time he was told "No" – Plaintiff had to pay the $166.40 fee and sign the electronic pad. The plaintiff repeatedly asked if he could obtain a copy of what he was being forced to sign but each time was told "No." The representative from PES refused to release Plaintiff's vehicle, stating that Plaintiff would have to pay the full towing fee of $166.40.

38. Plaintiff requested that he be provided a refund of the money, or a portion of the money, he had initially paid to park, but PES refused.

39. Late at night and requiring transportation to go home, Plaintiff was effectively left with no choice, but to sign the electronic pad "under duress" and pay the fees. At no time was Plaintiff provided a copy of the terms and conditions he signed. Plaintiff was not provided a receipt from PES that complied with City of Birmingham Ordinances.

40. In doing the acts alleged above and herein, PES, CRC and Crook violated City of Birmingham Ordinances including Ordinance No. 13-81, and Ordinance No 23-118, as amended, in the following ways:

   a. PES violated § 12-19-85(h) by charging the Plaintiff in excess of the permitted fee when he provided proof in the form of the receipt from the Park Mobile App showing that he had paid to park prior to the towing. Under § 12-19-85(h) PES was limited to charging one-half of the maximum fee of $160.00 as set forth in § 12-19-85(a) and (b).

13

DOCUMENT 2

b.   PES violated §12-19-84 by failing to provide the Plaintiff with a written receipt containing the following information:

(1) The name and address of the towing and recovery licensee;

(2) The address from which the vehicle was towed;

(3) The date and time that the vehicle was towed;

(4) The date and time that the vehicle entered the facility at which it was placed for storage;

(5) An itemized list of all the fees that are being charged; and,

(6) A signature of an authorized representative of the towing and recovery licensee.

(7) PES failed to provide the Plaintiff with an information sheet or card supplied by the City of Birmingham, regarding information about how to file a complaint with the City.

c, Through information and belief Crook and CRC violated §12-19-29(b)(2) which prohibits a parking lot owner from having a direct or indirect monetary interest in PES by both leasing the property located at 2608 5th Avenue South, Birmingham, Alabama 35233 to PES and providing financial incentives to PES to tow vehicles from pay-to-park lots owned and/or managed by Robert Crook.

14

DOCUMENT 2

d. PES violated § 12-19-41 and § 12-19-42 by failing to comply with the above regulations and establishing policies and/or taking action to discourage, prevent or correct violations by its tow truck drivers and employees.

e. PES and CRC violated § 12-19-50 by requiring that the Plaintiff sign an electronic pad that Plaintiff could not read or understand what he was signing, was not provided a copy of acknowledging why his vehicle was towed, and was not provided to the Plaintiff clearly and in a form he could read and understand prior to the agreement to park.

## CLASS ALLEGATIONS

41. Plaintiff brings this action individually and on behalf of all others similarly situated, under Rule 23 of the Alabama Rules of Civil Procedure.

42. The class of persons represented by Plaintiff in this action is defined as:

**Class member definition group number 1:**

All persons who had a vehicle towed but were not provided with a written receipt in conformance with under City of Birmingham Municipal Ordinance No 13-81, 23-118, §§12-19-1, et seq.

**Class member definition group 2:**

From February 27, 2018 to present, all persons who paid for parking at Defendant CRC's pay-to-park lots whose vehicle was towed by PES and who was forced to sign additional terms and conditions in order to retrieve their vehicle.

15

DOCUMENT 2

**Class member definition group 3:**

From  February 27, 2018 to present, all persons who paid for parking at Defendant CRC's pay-to-park lots in Birmingham, Alabama whose vehicle was towed and whose original parking fee was unjustly kept by CRC.

**Class member definition group 4:**

From September 30, 2023, to present, all persons who paid for parking on the Park Mobile App but who were towed by PES and were charged over and above the maximum statutory towing fee allowed pursuant to City of Birmingham Ordinance No. 23-118 § 12-19-85(h).

43. As the result of Defendants' tortious and illegal conduct, Plaintiff, and the class of persons he seeks to represent, are entitled to recover damages from Defendants.

44. Defendants engaged in standardized policies and practices with respect to Plaintiff and the members of the proposed class, including but not limited to:

Violations of City of Birmingham Ordinance Nos. 13-81 and 23-118, through Defendants' illegal collection of fees in excess of statutory maximums, failure to comply with regulations regarding provision of written documentation following nonconsensual vehicle towing and collusion between the parties to violate the Ordinance for his, its and their own benefit.

16

DOCUMENT 2

45. The class can be readily identified using Defendants' records[8], maintained by Defendants and/or their employees, representatives, or agents.

46. The class is so numerous that joinder of all class members is impracticable. The precise number of class members and their addresses are unknown to Plaintiff; however, they are readily available from Defendants' records. Class members may be notified of the pendency of this action by mail, supplemented (if deemed necessary or appropriate by the Court) by published notice.

47. This action involves questions of law and fact common to the class which predominate over questions affecting individual class members.

48. Plaintiff's claims are typical of the claims of the class because, among other things, Plaintiff, like the other members of the class, was subjected to Defendants' illegal conduct, including but not limited to the towing and withholding of Plaintiff and individual class members' vehicle for which Defendants did not have a valid reason to do so.

49. Plaintiff has displayed an interest in vindicating the rights of the class members and will fairly and adequately protect and represent the interests of the class. Plaintiff is represented by skillful and knowledgeable counsel. Plaintiff's interests do not conflict with those of the class and the relief sought by Plaintiff will inure to the benefit of the class generally.

---

[8] City of Birmingham Municipal Ordinance No. 13-81, §12-19-1, *et seq* and its amendment 23-118 requires Defendants maintain these records.

DOCUMENT 2

50. The questions of law and fact that are common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy between the class members and Defendants.

51. Defendants' actions are generally applicable to the class as a whole and to Plaintiff. For example, the class members can prove the elements of their negligence, conversion, trespass, unjust enrichment, and requests for injunctive relief on a class-wide basis using the same evidence that Plaintiff would use to prove those claims in an individual civil action.

52. Additionally, the damages or other financial detriment suffered by individual class members is relatively small compared to the burden and expense that would be required to individually litigate each of the class member's claims against Defendants. It would be impractical for the class members to individually seek redress for Defendants' wrongful conduct.

53. Even if the members of the class could afford individual litigation, given the expected size of the class, separate litigation of each class member's claims against Defendants would create the potential for inconsistent and/or contradictory judgments, and cause delay and increase the expenses for the parties and the Court in adjudicating the claims against Defendants. Conversely, a class action will prevent far fewer management difficulties, provide the benefits of a single adjudication, conserve time, effort, and expense, employ comprehensive and cohesive supervision by a single court, and provide a forum for small Plaintiffs.

DOCUMENT 2

54. The prosecution of separate actions by the individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual class members which would establish incompatible standards of conduct for Defendants. Moreover, the likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

55. Defendants have acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the members of the class as a whole.

56. Any difficulties in management of this case as a class action are outweighed by the benefits that a class action has to offer with respect to disposing of common issues of law and fact on issues affecting a large number of litigants.

57. Plaintiff's claims are typical of those of the class as a whole, and Plaintiff is capable of, and willing to, represent the other members of the class.

58. In each of the Counts below, Plaintiff incorporates and adopts each of the above and the foregoing allegations as fully set forth therein.


## CLASS EXCLUSIONS

59. Subject to additional information obtained through further investigation and discovery to be conducted, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint. Specifically excluded from the

class definition and this action are the Defendants, their officers, directors, agents trustees, partners, joint ventures, or entities controlled by the Defendants, and their heirs, successors, assigns or other persons or entities related to or affiliated with the Defendants and/or their officers and/or directors, or any of them;  Class Counsel, the Judge assigned to this action, and any member of the Judge's immediate family; as well as any individual party including their counsel involved in prior or current litigation against the Defendants.  This includes litigation which has either been reduced to a settlement agreement and/or judgment rendered or any litigation involving personal injury and/or wrongful death.

## CLASS CLAIMS

## COUNT ONE:  NEGLIGENCE, NEGLIGENCE PER SE, WANTONNESS

### -AS TO ALL DEFENDANTS-

60. Defendants owed the Plaintiff, and the class of individuals he seeks to represent, a duty not to be wanton and/or negligent in Defendants' conduct both in their dealings with the Plaintiff and members of the class he seeks to represent.

61. Defendants breached said duties to the Plaintiff, and the class of individuals he seeks to represent, and were wanton, negligent and/or negligent per se including but not limited to, the following:

20

a. Defendants have engaged in multiple violations of City of Birmingham Ordinance Nos. 13-81 and 23-118,§12-19-1 *et. seq.*, by engaging in the unauthorized towing of class members' vehicles in violation of the City of Birmingham Ordinance record keeping and disclosure rules, and the charging of illegal fees for towing vehicles without a right to do so.

b. Defendants' theft and trespass to the Plaintiff's and class members' vehicles;

c. Defendants' ratification of the theft and/or conversion of both Plaintiff's and proposed class members' vehicles;

d. Defendants' unjust enrichment as a result of retaining Plaintiff's payment to park;

e. The breach of the expressed and implied contract to park;

f. Defendants' unjust enrichment of towing fees;

g. As a direct result, Plaintiff and class members suffered embarrassment, mental anguish and emotional distress, loss of monies, loss of use of their automobiles, damage to their automobiles, and incidental and consequential damages.

60. Defendants, working collectively or as agents of each other, breached the duties they owed to Plaintiff and the class members. Such breaches arose out of the negligent and/or wanton conduct of the Defendants and those who acted in concert and/or conspiracy with the other Defendants or acted as their agents, servants, or

21

employees while in line and scope of Defendants' business, contractual, statutory, and regulatory duties. Defendants breached said duties owed to Plaintiff and the class of individuals he seeks to represent.

WHEREFORE, Plaintiff, on behalf of the putative class, requests that the Court award statutory, actual, and punitive damages in an amount appropriate to compensate him, and the class of individuals he seeks to represent, for the loss of monies, loss of use of their automobiles, incidental and consequential damages, as well as severe mental anguish and emotional distress, punitive damages to ensure deterrence of Defendants' said misconduct in the future, as well as costs of this proceeding and attorneys' fees in an amount a jury may deem appropriate.

## COUNT TWO: NEGLIGENCE, NEGLIGENT HIRING, AND NEGLIGENT SUPERVISION

### --AS TO ALL DEFENDANTS--

61. Defendants owed Plaintiff, and the class of individuals he seeks to represent, a duty of reasonable care in Defendants' conduct as to Plaintiff and class members and in the training and supervision of Defendants' employees. Said employees should perform services in full compliance with the laws of the State of Alabama as well as all local regulations and ordinances. Defendants should not engage or allow said agents to engage in the wrongful practices herein alleged. Defendants should not suppress or conceal such activities or enable said agents to do so. Defendants were negligent in not terminating or otherwise disciplining those

22

DOCUMENT 2

employees or agents known to have violated Defendants' company policies, state laws or local regulations by engaging in the misconduct herein alleged.

62. Defendants owed duties to Plaintiff, and the class of individuals he seeks to represent, in putting forth trained, skilled, loyal, honest, and fair dealing employees or agents who act in compliance with City, State and other local laws regarding the operation of private pay to park lots in the downtown Birmingham area, as well as the towing of unauthorized automobiles from private parking lots. Defendants owed a duty of good faith to Plaintiff, and class members, pursuant to City of Birmingham Ordinances, Alabama laws and local statutes and regulations governing private parking lot owners, and towing and recovery companies. Defendants further owed the Plaintiff and the class members he seeks to represent the duty of full compliance with City of Birmingham Ordinance Nos. 13-81 and 23-118.

63. Defendants' negligent retention of employees known to have engaged in the misconduct described herein acts as ratification of such misconduct.

64. Defendants knew, or should have known, of the wrongful practices engaged in by Defendants' employees or agents, and that Defendants' own training, supervision and retention practices were inadequate to fulfill obligations to protect the public. Defendants knew, or should have known, that the policies and practices in training, supervising, and retaining such employees were inadequate to prevent or detect the misconduct described herein. Such inadequate policies and practices

were the actual and direct cause of Plaintiff's and class members' aforementioned and extensive injuries.

65. Plaintiff, and the class of individuals he seeks to represent, incurred damages directly caused by Defendants' negligent conduct, negligence in training, supervising, and retaining employees and/or agents.

WHEREFORE, Plaintiff requests that this Court award damages in an amount appropriate to compensate him, and the class of individuals he seeks to represent, for the loss of monies, loss of use of his automobile, incidental and consequential damages, interest as well as punitive damages to ensure deterrence of Defendants misconduct in the future, as well as costs of this proceeding and attorneys' fees in an amount a jury may deem appropriate.

## COUNT THREE:  TRESPASS/TRESPASS TO CHATTELS

### --AS TO PES AND CRC --

66. Plaintiff repeats each and every allegation contained in the paragraphs above and below and incorporates such allegations by reference.

67. On or about December 15, 2023, Defendants PES and CRC intentionally and continuously interfered with Plaintiff's possessory and ownership interests in his property by wrongly asserting dominion over the vehicle, taking the vehicle without permission,  refusing to return the vehicle even after any payments owed were tendered, making him pay monies over and above what were legally allowed,

24

DOCUMENT 2

and by making agree to terms and conditions that were not allowed under law and not agreed when the contract to park was formed.

68. Said Trespass to Chattels was intentional and insulting and has caused Plaintiff to suffer financial losses and injury. PES and CRC wrongfully deprived the Plaintiff of his full interest in the vehicle and caused damages. PES and CRC carried out this conduct for their own use and benefit, without lawful justification, and without a lawful right.

69. As a result of Defendant's intentional, willful, wanton, and reckless conduct, Plaintiff has been damaged.

WHEREFORE, Plaintiff, and the class members he seeks to represent, demand judgment against Defendant PES and CRC for actual damages, punitive damages, attorney's fees, costs of this action, and other and further relief as the Court deems just and proper.

## COUNT FOUR:  MALICIOUS AND WILLFUL CONVERSION/CIVIL THEFT

### --AS TO DEFENDANTS CRC and PES--

70. Defendants' actions amount to (a) the appropriation of the Plaintiff's personal property to their own use and benefit, as well as that of the individual class members' he seeks to represent; (b) wrongful exercise and/or dominion over the personal property of the Plaintiff and class members; and, (c) the withholding of possession of the property of Plaintiff and class members.

25

DOCUMENT 2

71. The Defendants' conduct was willful, intentional, malicious, insulting, and oppressive.

72. As a proximate result, the Plaintiff, and the class he seeks to represent, have been caused to suffer loss of use of their property, loss of monies, incidental and consequential damages, and loss of interest.

WHEREFORE, Plaintiff and the class he seeks to represent request that this Court award them damages necessary to compensate them for the fair market value of their property at the time and place of conversion, loss of use of their personal property at the time and place of conversion, cost of recovery of their property, plus statutory interest from the time of conversion, including costs of this action and attorneys' fees, plus punitive damages to deter said conduct in the future.

### COUNT FIVE: UNJUST ENRICHMENT

*AS TO ALL DEFENDANTS*

73. Plaintiff hereby adopts and incorporates all preceding paragraphs as if fully stated herein.

74. Defendants, CROOK, CRC, and PES received a benefit at the expense of the Plaintiff and the class he seeks to represent. By illegally taking the automobile and personal property of the Plaintiff, and the class of individuals he seeks to represent, CRC, Crook, and PES received unlawful monies and profits.

26

DOCUMENT 2

75. It is unjust and inequitable to permit CRC, Crook, and PES to retain the benefits they have obtained through their unlawful scheme of taking and converting the property of the Plaintiff and class members and effectively holding their property for ransom until they consent to PES's new and separate terms and conditions. The financial benefits obtained by CRC, Crook, and PES should not, in fairness, be retained but rather should be disgorged and returned to Plaintiff and class members.

76. As a direct and proximate result of the inequitable conduct of CRC, Crook and PES, its agents, and/or employees, Plaintiff, and the class, have suffered damages, including monetary loss, overcharges of convenience fees, incidental and consequential damages.

WHEREFORE, Plaintiff, and the class he seeks to represent, requests that the Court award damages, punitive damages, costs and attorneys' fees, in an amount the Court deems appropriate to compensate Plaintiff and the class he seeks to represent, for their loss of monies, loss of property, incidental and consequential damages, interest in an amount to be determined by the Court.

## COUNT SIX: INJUNCTIVE AND EQUITABLE RELIEF

77. Plaintiff hereby adopts and incorporates all of the preceding factual averments as if fully set forth herein.

78. Plaintiff, and the class he seeks to represent, will continue to suffer irreparable

DOCUMENT 2

injury unless the conduct of the Defendants alleged is halted, and the Defendants are educated, trained, and made to comply with City of Birmingham Ordinance 13-81, §12-19-1, et seq. and its amendment 23-118.

79. Plaintiff specifically requests that that the Defendants be required, enjoined, and ordered to provide notice, as required under the City of Birmingham Ordinance Nos. 13-81 and 23-118, §12-19-74, to all persons whose vehicle has been towed by PES and that all future towing by PES comply with the requirements of the statute as well as contain the receipt and notice as required by statute.

## RELIEF REQUESTED

80. DAMAGES. As a direct and/or proximate result of PES, CRC and CROOK's wrongful actions and/or inaction, as described herein, Plaintiff and Class Members suffered, and continue to suffer, damages in the form of, inter alia: (i) the untimely and/or inadequate notification of their rights under The General Code for the City of Birmingham Ordinance Nos. 13-18, 23-118, §12-19-1 et seq.; (ii) value of Plaintiff's and class members automobile at the time and place of conversion(iii) loss of use of Plaintiff's and class members vehicle; (iv) out-of-pocket expenses incurred to mitigate the their damages due to the improper towing, improper disclosures and trouble pressed upon them by the Defendants conduct; (v) the value of their time spent mitigating damages and learning their rights; (vi) anxiety and emotional distress—for which they are entitled to compensation. (vii) monies unjustly retained by Defendants. (viii) interest from

28

DOCUMENT 2

the date and time of the taking of said monies

81. EXEMPLARY DAMAGES. Plaintiff and Class Members are entitled to exemplary damages as punishment and to deter such wrongful conduct in the future.

82. INJUNCTIVE RELIEF. Plaintiff and Class Members also are entitled to injunctive relief in the form of, without limitation, (i) requiring PES to, inter alia, immediately disclose and provide a written receipt and notice to Plaintiff and Class Members as required under City of Birmingham Ordinance Nos. 13-81 and 23-118, §12-19-1, et seq.; (ii) issue a permanent injunction enjoining PES in the future from requiring the signing of additional terms not previously agreed to and not required under the above statutes; (iii) requiring PES submit to periodic compliance audits by a third party regarding the implementation of and compliance with such policies and procedures; and (iv) forward a copy of these proceedings and findings to the Birmingham City Counsel to review as part of the continued licensing of PES.

WHEREFORE, Plaintiff, on behalf of himself and Class Members, respectfully request that (i) CRC, COOK, and PES to appear and answer this lawsuit, (ii) this action be certified as a class action, (iii) Plaintiff be designated the Class Representative, and (iv) Plaintiff's counsel be appointed as Class Counsel. Plaintiff, on behalf of himself and Class Members, further request that upon final trial or hearing, judgment be awarded against the Defendants, in favor of Plaintiff and the Class Members, for: (i) actual damages, consequential damages, and/or nominal damages, as described above, in an amount to be determined by the trier of fact; (ii)

29

DOCUMENT 2

exemplary damages; (iii) injunctive relief as set forth above; (iv) pre-and post-judgment interest at the highest applicable legal rates; (v) costs of suit; and (vi) award attorney's fees; (vii) and, such other and further relief that this Court deems just and proper

Respectfully submitted, on this the 26th day of February 2024.

*/s/ Michael E. Parrish*
Michael E. Parrish
Thomas C. Donald
David A. Holcombe
Alabama Car Lawyers, LLC
1707 29th Court South
Birmingham, AL 35209
Phone: 205 547 5747
Email: mparrish@alabamacarlaw.com
        cdonald@alabamacarlaw.com
        dholcombe@alabamacarlaw.com

/s/ Rhonda Steadman Hood
Rhonda Steadman Hood HOO024
HOOD LAW, LLC
1117 22nd Street South, Ste. 101
Birmingham, AL 35205
Phone: 205 323 4123
Email: rhonda@whlfirm.com

PLEASE SERVE THE DEFENDANTS AT THE FOLLOWING ADDRESSES:

PARKING ENFORCEMENT SYSTEMS, INC.
C/O Christopher Andrew Mayer
2011 Oak Lane

30

DOCUMENT 2

Birmingham, AL  35226


CRC 2, LLC
c/o Robert L. Crook, Jr.
2101 1st Avenue North #200
Birmingham, AL  35203


Mr. Robert L. Crook, Jr.
2101 1st Avenue North #200
Birmingham, AL  35203